❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.23-1820M(NJ) |
| Information associated with a black Samsung smart | ) | **Matter No.: 2023R00377** |
| phone with IMEI 358132923416803 seized from | ) | |
| Christopher Haywood; See Attachments | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ___Eastern___ District of ___Wisconsin___
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 10/30/2023 ___ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     xx❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Nancy Joseph___.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for ___ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of ___.

Date and time issued:10/16/2023 @ 3:23 p.m. ___

*Judge's signature*

City and state:    ___Milwaukee, Wisconsin___          ___Hon. Nancy Joseph, U.S. Magistrate Judge___
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

The property to be searched is described as follows:

a. A black Samsung smart phone with associated International Mobile Equipment Identity (IMEI) 358132923416803 seized from Christopher HAYWOOD, hereinafter "**TARGET DEVICE;**"

The "**TARGET DEVICE**," is currently located at 11548 Theo Trecker Way, West Allis, WI 53214. This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

19

## ATTACHMENT B

All records on the **TARGET DEVICE** described in Attachment A that relate to a violation of Title 21 U.S.C. § 841 (Possession with Intent to Distribute Controlled Substances), and Title 18 U.S.C. § 922(g) (Felon in Possession of a Firearm) and 843(b) (Use of Communications Facilities to Facilitate Controlled Substance Felonies).

1. Including, but not limited to:

   a. contact lists;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information regarding schedules or travel;

   f. all bank records, checks, credit card bills, account information, and other financial records;

   g. photographs and/or video depicting possession of drugs and/or others who may; and

   h. records of Internet Protocol (IP) addresses used; records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user typed web addresses.

20

2. Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with a black Samsung smart<br>phone with IMEI 358132923416803 seized from<br>Christopher Haywood; See Attachments | )<br>)<br>)<br>)<br>)<br>)    Case No.23-1820M(NJ)<br>**Matter No.: 2023R00377** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841<br>18 U.S.C. § 922(g)<br>18 U.S.C. § 843(b) | Possession with Intent to Distribute Controlled Substances; Felon in Possession<br>of a Firearm; Use of Communications Facilities to Facilitate Controlled Substance<br>Felonies; |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JEREMY S DORN     | Digitally signed by JEREMY S DORN<br>Date: 2023.10.13 13:53:16 -05'00'

*Applicant's signature*

SA Jeremy Dorn, HSI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____

*(specify reliable electronic means)*.

Date: 10/16/2023

*Judge's signature*

City and state:   Milwaukee, Wisconsin     Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE
## MATTER NO.: 2023R00377

I, Jeremy Dorn, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations/U.S. Immigration and Customs Enforcement (HSI/ICE), assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin.  As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7) and 21 U.S.C. § 878, that is, I an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in 18 U.S.C. § 2516.  I am also a Task Force Officer (TFO) with the United States Department of Justice, Drug Enforcement Administration, currently assigned to DEA Group 63, at the North Central High Intensity Drug Trafficking Area (HIDTA).  I have been a federal law enforcement agent for over ten years.  I have received basic criminal investigative training, including thirty-six weeks at the Federal Law Enforcement Training Center (FLETC).  In the course of my work, I have become knowledgeable with the enforcement of federal laws pertaining to narcotics and dangerous drugs. I have participated in drug-trafficking investigations and firearm investigations conducted by HSI/ICE, the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), the United States Postal Service (USPS) and other law enforcement agencies, which resulted in the arrest of

subjects, and the seizure of property, assets, firearms, and controlled substances. I am currently a member of the North Central HIDTA Task Force assigned to the opioid initiative as an investigator specializing in the smuggling, trafficking, and distribution of dangerous and controlled substances.

3.     I am familiar with various methods of smuggling and trafficking controlled substances and their proceeds. I am also familiar with methods used by traffickers to evade detection of both the controlled substances and the proceeds of illegal activity. I have received training in the investigation of, and am knowledgeable in, investigations pertaining to drug trafficking, illegal firearm possession and trafficking, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises.

4.     I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of state and federal narcotics laws. I have participated or assisted in numerous federal search warrants for narcotic related offenses, which have resulted in the seizure of controlled substances, firearms, United States currency, vehicles, real estate, electronic devices, and/or jewelry from individuals involved in narcotic trafficking.

5.     I have extensive training and experience in the investigation of Drug Trafficking Organizations (DTO). I am familiar with the different structures, and the variety of roles of the members within the organizations. I have participated in these types of investigations as both the lead investigator and co-agent and have successfully disrupted and/or dismantled them by use of several law enforcement investigation techniques to include wiretaps and search warrants.

6.      In addition, through training, experience, and discussions with other experienced

agents:

     a.  I have learned about the manner in which individuals and organizations distribute controlled substances;

     b.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, fentanyl, and crack cocaine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

     c.  I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded.  I also know various code names used to describe controlled substances;

     d.  I know drug dealers often put telephones in the names of others (nominees) or obtain pre-paid cellular telephones from companies where no subscriber name or address is required to distance themselves from telephones that they use to facilitate drug distribution.  Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

     e.  I know drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies.  I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

     f.  I know drug traffickers must maintain on-hand, large amounts of U.S. currency to maintain and finance their ongoing drug business;

     g.  I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

     h.  I know it is common for drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law

3

enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to, safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence;

i.   I know it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment, and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages, and outbuildings), businesses or other locations over which they maintain dominion and control as well as recorded or photographed in their cell phones;

j.   I know drug traffickers often use electronic equipment such as telephones (landlines and cell phones), computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k.   I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

l.   I know drug traffickers commonly maintain addresses or telephone numbers in books or papers or within their electronic devices that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

m.   I know drug traffickers take or cause to be taken photographs of themselves; their associates, their property and their drugs. These traffickers usually maintain these photographs in their possession;

n.   I know a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded buy money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband,

4

weapons, and money. Additionally, all telephone calls made by the informant while under the direction and control of case agents are recorded; and

o. During the course of residential and/or electronic device searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

7. I am personally involved in the investigation of the offenses discussed in this affidavit. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers (LEOs), including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written information that I have received directly or indirectly from other LEOs about this and other drug-trafficking investigations; (c) discussions I personally had concerning this investigation with other experienced drug-trafficking investigators; and (d) physical surveillance by Homeland Security Investigations (HSI) and the United States Marshals Service.

8. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause of violations of Title 21 U.S.C. § 841 (Possession with Intent to Distribute Controlled Substances), Title 21 U.S.C. § 843(b) (Use of Communications Facilities to Facilitate Controlled Substance Felonies), 18 U.S.C. § 922(g) (Felon in Possession of a Firearm) and 924(c) (use of a firearm in furtherance of drug trafficking) collectively referred to as the **TARGET OFFENSES**.

9. The property to be searched is described as follows (and in Attachment A):

a.     A black Samsung smart phone with associated International Mobile Equipment Identity (IMEI) 358132923416803 seized from Christopher HAYWOOD, hereinafter "**TARGET DEVICE;**"

10.     The "**TARGET DEVICE,**" is currently located at 11548 W Theo Trecker Way, West Allis, WI 53214 which is where the HIDTA evidence is secured.  The **TARGET DEVICE** was found pursuant to the October 5, 2023, fugitive arrest of Christopher HAYWOOD in Milwaukee, WI.

11.     The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

12.     The United States, Department of Homeland Security, Homeland Security Investigations (HSI), and the United States Marshals Service (USMS) is investigating possible violations of Title 21 U.S.C. § 841 (Possession with Intent to Distribute Controlled Substances), Title 21 U.S.C. § 843(b) (Use of Communications Facilities to Facilitate Controlled Substance Felonies), 18 U.S.C. § 922(g) (Felon in Possession of a Firearm) and 924(c) (use of a firearm in furtherance of drug trafficking) collectively referred to as the **TARGET OFFENSES**.

13.     On May 18, 2022, the Nacogdoches, TX, Police Department (NPD) requested assistance from HSI Beaumont, TX, regarding two related traffic stops in Nacogdoches and Rusk County, TX involving two cars which appeared to be travelling in tandem. The two cars were traveling on Highway 59 in Texas, which is a notorious

drug route which commences in Mexico and travels throughout the United States. The rental vehicle stopped in Nacogdoches, TX was driven by Milwaukee, WI, resident Christopher HAYWOOD, and contained 8.6 grams marijuana, 1.5 grams ecstasy, and cellular devices. The second vehicle stopped a short distance from the HAYWOOD vehicle, in Rusk County, TX was driven by Wisconsin resident Nathaniel MOORE and registered to HAYWOOD. During a consent search of the vehicle registered to HAYWOOD the Rusk County Sheriff's Office (RCSO) Deputies discovered approximately 15 kilograms of suspected cocaine.

14. The investigation conducted by HSI Beaumont, TX, in coordination with the NPD and RCSO determined HAYWOOD and MOORE coordinated the transportation of the 15 kilograms of cocaine. I know from my training and experience that those who transport large amounts of narcotics will often travel in more than one car so as to avoid being noticed by law enforcement and that they will also use rental cars to be able to disassociate themselves from any contraband found in one of the vehicles. As part of the Texas investigation, law enforcement was able to determine that HAYWOOD and MOORE had traveled together from Wisconsin to Texas and that they had each used one of the two vehicles to travel from Wisconsin through to Texas even though neither one of them had anyone else in their respective vehicles.

15. HAYWOOD and MOORE had cellular devices at the time of their arrest and examination of those cellular devices was conducted pursuant to a search warrant authorized on June 1, 2022, by the Honorable Judge Jack Sinz, State of Texas, County of Nacogdoches. Some of the cell phones searched pursuant to that warrant were found to

7

have been completely wiped prior to law enforcement being able to find any information on them. The examination of the other cellular phones seized from HAYWOOD and MOORE revealed text message from conversations just prior to their departure from Milwaukee to Texas in which HAYWOOD instructed MOORE to rent a vehicle and that he wanted MOORE to rent a car that "won't stand out."

16.     In April 2023, the Drug Enforcement Administration (DEA) laboratory in Houston, TX, completed chemical analysis of the suspected cocaine and returned results which indicated a high confidence level determining the substance to be cocaine.

17.     On July 19, 2023, a federal Grand Jury, Eastern District of Texas, Lufkin Division (EDTLD), returned a True Bill Indictment (Ref No. 9:23-CR-17) of HAYWOOD and MOORE for violations of Title 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance – over 5 kilograms of cocaine; and Title 18 U.S.C. § 2 (Aiding and Abetting).

18.     On July 20, 2023, the EDTLD issued warrants for the arrest of HAYWOOD and MOORE.  Further investigation by HSI Beaumont, TX, determined HAYWOOD and MOORE were suspected of living in Wisconsin.  On July 29, 2023, the La Crosse, WI Police Department arrested MOORE pursuant to the EDTLD arrest warrant during a routine traffic stop.  HSI Milwaukee, WI, subsequently transported MOORE to the Western District of Wisconsin where he was turned over to the USMS and eventually returned to the Eastern District of Texas, where he is presently detained awaiting trial.

19.     On October 5, 2023, HSI Milwaukee and the USMS Great Lakes Regional Fugitive Task Force (GLRFTF), based on information developed by law enforcement,

8

attempted to locate HAYWOOD in Milwaukee as they knew there was an active warrant for his arrest issued by the Eastern District of Texas. As part of efforts to locate HAYWOOD officers observed HAYWOOD in a vehicle and observed that he was the sole person in the vehicle. They followed the vehicle until it stopped, and HAYWOOD exited the vehicle with a backpack. Officers, based on their earlier investigation, recognized the location where he stopped as being his mother's residence in Milwaukee, WI. When HAYWOOD got out of the vehicle, officers told HAYWOOD to stop, and he left the driver's door open and put his hands up. He then dropped the backpack that he had on him, and officers noted that it was open. When officers looked into the car, they also noted a firearm magazine located between the front driver and passenger seat. HAYWOOD was arrested pursuant to the warrant for his arrest in the EDTLD. During a search incident to arrest, law enforcement discovered two clear plastic baggies in HAYWOOD's left trouser pocket, each containing blue pills stamped with "M-30." Sixty-one blue "M-30" pills were seized from the two clear plastic baggies found on HAYWOOD's person and later field-tested positive for the properties of cocaine. I know from my training and experience that blue pills bearing markings of "M-30" on them are common counterfeit pills which generally resemble oxycodone, hydrocodone, Xanax, among others, which are generally mixed with fentanyl, MDMA, and other drugs which drug trafficking organizations are known to specifically use to target kids and teen customers. Moreover, based on my training and experience I know that the number of pills recovered and the manner in which they were packaged is consistent with distribution amounts of narcotics.

Case 2:23-mj-01820-NJ     Filed 10/16/23     Page 15 of 27     Document 1

20.     The **TARGET DEVICE** was discovered in HAYWOOD's right trouser pocket.  Upon discovery of the **TARGET DEVICE**, HAYWOOD requested law enforcement turn over the **TARGET DEVICE** to HAYWOOD's mother. Based on my training and experience, I know that those involved in drug trafficking will often direct law enforcement, when being arrested, to give their cell phone to trusted individuals in an  attempt to prevent law enforcement from searching them and/or to allow a family member or co-conspirator to either physically or remotely "wipe" the data, and any potential incriminating communications from a subject's device to evade detection by law enforcement during any authorized search of the device.  Law enforcement did not give the cell phone to HAYWOOD's mother, but rather took it as evidence.

21.     Law enforcement discovered a Smith & Wesson semi-automatic 9mm handgun, loaded with a magazine in HAYWOOD's backpack. Although there was not a round loaded in the chamber of the handgun, it did contain (14) 9mm rounds of ammunition in the firearm. Law enforcement also removed the second magazine they had observed in plain view on the center console of the vehicle driven by HAYWOOD which contained an additional (14) rounds of 9mm ammunition.  Based on my training and experience, it is common for drug dealers to possess firearms to protect their illicit narcotics and proceeds gained from the sale of narcotics.

22.     A review of HAYWOOD's prior criminal record revealed that on May 13, 2003, he was convicted of a felony charge of Possession with Intent to Manufacture, Distribute, or Deliver a Controlled Substance out of the Milwaukee County Circuit Court and therefore is a convicted felon and is prohibited from possessing a firearm.

10

23.     The **TARGET DEVICE**, narcotics, handgun, ammunition, and magazines were seized pursuant to potential violations of Title 21 U.S.C. § 841 (Possession with Intent to Distribute Controlled Substances), Title 21 U.S.C. § 843(b) (Use of Communications Facilities to Facilitate Controlled Substance Felonies), and 18 U.SC. § 922(g) (Felon in Possession of a Firearm) and 924(c) (use of a firearm in furtherance of drug trafficking) collectively referred to as the **TARGET OFFENSES**.

24.     HAYWOOD was subsequently transported to the Eastern District of Wisconsin and processed by the USMS.

25.     Based on the foregoing, law enforcement agents believe there is probable cause to believe that the **TARGET DEVICE** contains evidence of the **TARGET OFFENSES**.

## **TECHNICAL TERMS**

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone

11

numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

12

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations.

13

PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14

27.     Based on my training, experience, and research, I know that the **TARGET DEVICE** has capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices such as the **TARGET DEVICE** can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices such as the **TARGET DEVICE**.  This information can sometimes be recovered with forensics tools.

29.     There is probable cause to believe that things that were once stored on the **TARGET DEVICE** may still be stored there, for at least the following reasons:

  a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

  b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used

by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

30. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant (the **TARGET OFFENSES**), but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that

16

show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

17

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

33.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICE** described in Attachment A to seek the items described in Attachment B.

**ATTACHMENT A**

The property to be searched is described as follows:

    a.   A black Samsung smart phone with associated International Mobile Equipment Identity (IMEI) 358132923416803 seized from Christopher HAYWOOD, hereinafter "**TARGET DEVICE;**"

The "**TARGET DEVICE**," is currently located at 11548 Theo Trecker Way, West Allis, WI 53214. This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All records on the **TARGET DEVICE** described in Attachment A that relate to a violation of Title 21 U.S.C. § 841 (Possession with Intent to Distribute Controlled Substances), and Title 18 U.S.C. § 922(g) (Felon in Possession of a Firearm) and 843(b) (Use of Communications Facilities to Facilitate Controlled Substance Felonies).

1. Including, but not limited to:

    a. contact lists;

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information regarding schedules or travel;

    f. all bank records, checks, credit card bills, account information, and other financial records;

    g. photographs and/or video depicting possession of drugs and/or others who may; and

    h. records of Internet Protocol (IP) addresses used; records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user typed web addresses.

20

2.      Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.